**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| Civil Action No. 1:21-cv-01972-SKC | ) |
| | ) |
| MATTHEW SANDOFSKY, individually and on behalf of all similarly situated individuals, | ) ) |
| | ) |
| Plaintiff(s), | ) |
| v. | ) |
| | ) |
| TURBOTENANT, INC., a corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS OR, ALTERNATIVELY, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant TurboTenant, Inc. ("TurboTenant"), pursuant to 9 U.S.C. §§ 3-4, 6 and Fed. R. Civ. P. 12(b)(1), respectfully requests that the Court compel arbitration of Plaintiff's claims and stay this proceeding until the arbitration is concluded, or, in the alternative, dismiss this suit for lack of subject matter jurisdiction. In support of its motion,[1] TurboTenant states as follows:

**I.     INTRODUCTION**

TurboTenant is a Colorado-based company that provides online property management services to landlords and tenants in various housing markets across the country. In this action, *pro se* plaintiff Matthew Sandofsky alleges that TurboTenant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, when it transmitted a consumer report containing allegedly inaccurate information about Plaintiff to a prospective landlord in New Jersey.

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that he conferred with Plaintiff regarding his contractual obligation to arbitrate all disputes between the parties and this motion. Plaintiff opposes the requested relief.

At the time Plaintiff registered to use TurboTenant's online services, Plaintiff agreed to be bound by the Terms of Use available on TurboTenant's website. Those Terms of Use contain a straightforward dispute resolution provision that requires any disputes with TurboTenant to be resolved exclusively through binding arbitration administered by JAMS. Despite this clear contractual language, Plaintiff, an attorney licensed in the State of Massachusetts, filed this action in the United States District Court for the District of New Jersey, which transferred venue to this Court in accordance with the choice of forum in the Terms of Use.

As set forth below, well-settled federal law and policy favoring the enforcement of arbitration agreements renders this Court's task relatively simple. Given the existence of a valid arbitration agreement between the parties and the broad delegation of authority to the arbitrator, this Court must compel this case—including all questions concerning the arbitrability of Plaintiff's claims—to arbitration and stay further proceedings until the arbitration has concluded. Alternatively, the Court should dismiss this suit for lack of subject matter jurisdiction.

## II.   FACTUAL BACKGROUND

1. Plaintiff filed his Complaint in the U.S. District Court, District of New Jersey on or about January 6, 2021. Dkt No. 001. TurboTenant was served with the Complaint on March 10, 2021. *See* Exhibit A, Declaration of Sarnen Steinbarth ("Steinbarth Decl.") ¶ 4.

2. TurboTenant filed a Motion to Transfer Venue to the U.S. District Court, District of Colorado on April 13, 2021, which was granted on July 6, 2021. Dkt No. 13. TurboTenant received notice that the case was transferred on July 21, 2021. Dkt No. 14

3. Plaintiff alleges that he is a resident of Massachusetts. Dkt No. 001, Complaint ("Compl.") ¶ 1. TurboTenant is a Delaware corporation with its principal place of business in Fort Collins, Colorado. *See* Steinbarth Decl. ¶ 5.

4. TurboTenant provides online property management software for landlords and tenants including marketing of rental properties, tenant screening, online rental payments and application processing for prospective tenants. *See* Steinbarth Decl. ¶ 6. TurboTenant's website is located at https://www.turbotenant.com/ (the "Website"). *Id.* ¶ 6.

5. Plaintiff alleges that, after he filled out an online application, TurboTenant transmitted a consumer report that it obtained from TransUnion to a prospective landlord in New Jersey. He alleges that the report contained "injurious inaccuracies" and that TurboTenant refused to correct said inaccuracies in violation of FCRA. *See* Compl. ¶¶ 4, 6-8. Plaintiff does not identify the particular statements in the report that were inaccurate.

6. Plaintiff seeks both statutory damages under FCRA and class relief pursuant to Fed. R. Civ. P. Rule 23(a) in his Complaint. Compl. ¶¶ 9-10.

7. When filling out a rental application on the Website, potential tenants must click a "Get Started" button, which is directly above a notice that states "By clicking the button above you are agreeing to our Application Authorization Policy, Terms of Use, & Privacy Policy." *See* Steinbarth Decl. ¶ 10, Exhibit 2 (Website Screenshot). A copy of the Terms of Use to which Plaintiff agreed is attached to the declaration submitted in support of this motion. *Id.* at Exhibit 1.

8. The Terms of Use are available for users to read by clicking on the hyperlink, and this hyperlink is also available on subsequent pages as the user completes the application process. *See* Steinbarth Decl. ¶¶ 10-11; Exhibit 2.

9. Section 23 of the Terms of Use states: "The Terms are governed by and shall be construed in accordance with the laws of the State of Colorado without regard to its conflict of laws rules." *See* Steinbarth Decl. at Exhibit 1, § 23.

10. Section 24 of the Terms of Use contains an arbitration provision which states:

> We and you each agree to first attempt to contact each other with respect to any disputes and provide a written description of the problem, all relevant documents/information. and the proposed resolution. You agree to contact us with disputes by contacting us at support@turbotenant.com and we will attempt to contact you based on the contact information you have provided us.
>
> If after 30 days you and we are unable to resolve any such dispute, then the dispute may only be submitted to arbitration consistent with this section. You understand that you would have had a right or opportunity to litigate such dispute through a court and to have a judge or jury decide the case, absent this provision and that you and we have chosen to have any disputes resolved through arbitration.
>
> As such, any dispute between any Indemnified Party [TurboTenant] (including, to the full extent permitted by applicable law, third parties who are not signatories to this agreement) and you that is not resolved through negotiation, including any dispute as to the validity or applicability of this arbitration clause, shall be resolved by binding arbitration administered by the JAMS under its rules and procedures in effect when the claim is filed. The rules and procedures and other information, including information on fees, may be obtained from JAMS' website (www.jamsadr.com) or by calling JAMS at 949-224-1810.
>
> We and you are entering into this arbitration agreement in connection with a transaction involving interstate commerce. Accordingly, this arbitration agreement and any proceedings

>thereunder shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16. Any award by the arbitrator(s) may be entered as a judgment in any court having jurisdiction.
>
>Notwithstanding the foregoing, either of us may bring qualifying claims in small claims court. Further, as set forth below, we each agree that any arbitration will be solely between you and the Indemnified Party, not as part of a class claim (i.e., not brought on behalf of or together with another individual's claim). If for any reason any court or arbitrator holds that this restriction is unconscionable or unenforceable, then our agreement to arbitrate does not apply and the class-wide dispute must be brought in court.

*See* Steinbarth Decl. at Exhibit 1, § 24.

11. The Terms of Use also prohibit Class Actions.

>TO THE EXTENT ALLOWED BY LAW, YOU AND WE EACH WAIVE ANY RIGHT TO PURSUE DISPUTES ON A CLASS-WIDE BASIS, TO EITHER JOIN A CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY OR TO ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE IN ANY LAWSUIT, ARBITRATION, OR OTHER PROCEEDING.

Steinbarth Decl. at Exhibit 1, § 25.

12. On March 22, 2021, TurboTenant's counsel wrote to Plaintiff and requested that he voluntarily dismiss his case and submit the parties' dispute to arbitration in accordance with the Terms of Use. Plaintiff refused this request.

### III.   LEGAL STANDARDS

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), empowers "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 3 of the FAA states that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement… ." 9 U.S.C. § 3.  Section 6 of the FAA further states that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.  In the United States District Court for the District of Colorado, motions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See, e.g., Tolliver v. True et al.*, 2007 WL 2909393 *1-2 (D. Colo. Sept. 28, 2007).  When considering such motions, a court has discretion to consider affidavits and other documents proffered by a defendant.  *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

## IV.   ARGUMENT

### A.   The Federal Arbitration Act Applies to the Arbitration Agreement

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms."  *Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotations and citation omitted).  The Tenth Circuit has held the FAA manifests a "liberal federal policy favoring arbitration."  *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991)).  Thus, "courts are instructed to resolve any doubts concerning the scope of arbitrable issues ... in favor of arbitration…. In addition, this liberal policy covers more than simply the substantive scope of the arbitration clause, and

encompasses an expectation that [arbitration] procedures will be binding." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (internal quotations and citations omitted).

The FAA governs this Motion to Compel for two reasons. First, the arbitration agreement between the parties explicitly states that it is governed by the FAA. *See* Steinbarth Decl. at Exhibit 1, § 24. Courts routinely enforce FAA choice-of-law provisions. *See, e.g., Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1144 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013); *accord Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1316 (11th Cir. 2010).

Second, the FAA applies to contracts "evidencing a transaction involving interstate commerce," 9 U.S.C § 2, and the arbitration agreement here expressly acknowledges that the parties are entering into the contract in connection with a transaction involving interstate commerce. *See* Steinbarth Decl. at Exhibit 1, § 24. Further, TurboTenant is located in Colorado and provides its services across the United States. *See* Steinbarth Decl. at ¶¶ 5, 7. The underlying transaction at issue involves the use of the Internet and other communication technologies to transmit a tenant screening report to the State of New Jersey. This is activity sufficient to meet the "involving commerce" requirement under the FAA. *See Utah Lighthouse Ministry v. Found. For Apologetic Info. & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("[T]he Internet is generally an instrumentality of interstate commerce"); *see also Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56 (2003) (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because the defendant engaged in business of the type at issue in multiple states) (internal quotation marks and citation omitted).

Accordingly, because the FAA applies, the Court is fully empowered to enforce the arbitration agreement between the parties.

### B. A Valid and Enforceable Agreement to Arbitrate Exists

A court should grant a motion to compel arbitration if "there are no genuine issues of material fact regarding the parties' agreement." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (internal citations omitted). Similar to a summary judgment standard, the moving party has the initial burden to show that the arbitration clause applies to the other party, who then may rebut such showing only by establishing a genuine dispute as to whether the clause applies. *Id*.

The existence of an arbitration agreement is a matter of state contract law. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014), *aff'd*, 811 F.3d 371 (10th Cir. 2016).

Under Colorado law, contract formation principles apply to online agreements, with the threshold question being "did the consumer have reasonable notice, either actual or constructive, of the terms of the putative agreement and did the consumer manifest assent to those terms." *Vernon*, 857 F. Supp. 2d at 1149 (holding that customers had agreed to terms of arbitration agreement even though the terms were available through a link or website and did not automatically appear). This rule applies to both clickwrap and browsewrap type online agreements. *Id*. In a clickwrap agreement, a user must click a button to manifest assent to terms prior to continuing use of a website. *Id*. In a browsewrap agreement, terms and conditions are

available through a hyperlink at the bottom of a user's screen. *Id*. In a hybrid agreement, terms and conditions are available via a hyperlink rather than automatically appearing on the screen, but the user must still take an affirmative action manifesting assent (clicking a button). *Id*.

Here, Plaintiff had reasonable notice of and agreed to the Terms of Use by manifesting assent to TurboTenant's hybrid browsewrap agreement. In order to complete the online rental application, Plaintiff was required to click the "Get Started" button. Directly underneath this button is a notice that Plaintiff was consenting to the Terms of Use by clicking the button. The Terms of Use were accessible by clicking a hyperlink underneath the button, and were also available by hyperlink on subsequent pages throughout the application process. This online agreement provided reasonable notice to Plaintiff of the Terms of Use and fits squarely within the definition of a modified browsewrap agreement, which is enforceable under Colorado law. *Vernon*, 857 F. Supp. 2d at 1152.

In this case, there is no genuine dispute about the existence and enforceability of the arbitration agreement between the parties. Plaintiff was provided clear notice of TurboTenant's Terms of Use and manifested his assent to such terms, including the arbitration clause, when he completed the online application process. Thus, it is clear that a valid and enforceable arbitration agreement exists under Colorado law.

### C. The Dispute Falls Within the Scope of the Arbitration Agreement

Where, as here, the parties have clearly and unmistakably delegated questions about arbitrability to the arbitrator, the Court need not reach the question of whether the dispute falls within the arbitration agreement's scope. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); Steinbarth Decl. at Exhibit 1, § 24 ("any dispute between any Indemnified Party

[TurboTenant] . . . and you that is not resolved through negotiation, *including any dispute as to the validity or applicability of this arbitration clause*, shall be resolved by binding arbitration administered by the JAMS (emphasis added). Such questions are within the exclusive purview of the arbitrator. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70.

If the Court elects to undertake this inquiry, it must determine if the dispute falls within the scope of the agreement through a three-part inquiry. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). First, the court determines whether the arbitration clause is broad or narrow. *Id*. If narrow, the court decides whether the dispute fits within the clause on its face or over a collateral issue. *Id*. "Where the arbitration clause is broad, there arises a presumption of arbitrability." *Id*.

In this case, the arbitration clause applies to "any dispute" between TurboTenant and the user of the Website. *See* Steinbarth Decl. at Exhibit 1, § 24. Thus, the arbitration clause is clearly broad, which gives rise to a presumption of arbitrability. *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (holding that arbitration clause applying to "[a]ny dispute, difference or unresolved question" was broad). The parties' dispute here regarding alleged violations of FCRA falls squarely within the definition of "any dispute." Furthermore, given the FAA's liberal policy of favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### D. Plaintiff Is Obligated to Arbitrate His Claims Solely on an Individual Basis

As set forth above, the Terms of Use contains a broad class action waiver precluding Plaintiff from asserting his claims on behalf of a putative class. Steinbarth Decl. at Exhibit

1, § 25. In conformity with this waiver, the arbitration agreement states that "any arbitration will be solely between you and the Indemnified Party, not as part of a class claim (*i.e.*, not brought on behalf of or together with another individual's claim)." Steinbarth Decl. at Exhibit 1, § 24. As the Supreme Court has recognized, class action waivers in arbitration agreements are fully enforceable and pose no obstacle to arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *see also Vernon*, 857 F. Supp. 2d at 1157*; Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) ("The law is clear that the waiver of class/collective claims cannot render the Arbitration Provision unconscionable.").

## V.     CONCLUSION

For the above reasons, TurboTenant respectfully requests that the Court compel arbitration of Plaintiff's claims and stay this proceeding until the arbitration is concluded, or, in the alternative, dismiss this suit for lack of subject matter jurisdiction.

Respectfully submitted this 29th day of July, 2021.

                    BERG HILL GREENLEAF RUSCITTI LLP

                    */s/ Rudy E. Verner*
                    Rudy E. Verner, Atty. Reg. # 34286
                    Megan Gutwein, Atty. Reg. # 50344
                    1712 Pearl Street
                    Boulder, CO  80302
                    Tel:  (303) 402-1600
                    Fax:  (303) 402-1601
                    Email:  rev@bhgrlaw.com; mg@bhgrlaw.com
                    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2021, I caused a true and correct copy of the foregoing **DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS OR, ALTERNATIVELY, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** to be electronically filed and served via CM/ECF to the following counsel of record:

Matthew Sandofsky, Esq.                *Attorney for Plaintiff*
90 Canal Street, 4th Floor
Boston, MA  02114
Tel:  (617) 817-1785
Email:  mls@sandofskylaw.com


　　　　　　　　　　　　　　　　　　　*/s/ JoAnn Keen*
　　　　　　　　　　　　　　　　　　　　JoAnn Keen, Legal Assistant